UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARICELA MARTINEZ-MARTINEZ,<br><br>                                    Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; PATRICK DIVVER, Field Office Director, San Diego Field Office, U.S. Immigration and Customs Enforcement; CHRISTOPHER LAROSE, Senior Warden, Otay Mesa Detention Center; SIRCE OWEN, Acting Director of the Executive Office for Immigration Review (EOIR), U.S. Department of Justice; PAMELA BONDI, Attorney General, U.S. Department of Justice,<br><br>                                    Respondents. | Case No.: 25cv2975-GPC(VET)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

       On November 2, 2025, Petitioner Maricela Martinez-Martinez ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from custody, or in the alternative, order a constitutionally adequate bond hearing. (Dkt. No.

1

1, Pet.) Respondents file a return on November 10, 2025, and Petitioner filed a traverse on November 14, 2025. (Dkt. Nos. 4, 5.) Based on the reasoning below, the Court GRANTS the petition for writ of habeas corpus.

## Background

Petitioner, a Mexican national, entered the United States without inspection at a non-designated location around 2006. (Dkt. No. 1, Pet. ¶ 28.) She has lived in the United States for almost twenty years and has deep and longstanding ties to her community. (*Id.* ¶¶ 29.) She is the mother of two U.S. born minor children and has no criminal record. (*Id.* ¶¶ 30, 32.)

Around July 14, 2025, Petitioner was arrested by ICE officers while she was in her driveway washing her car. (*Id.* ¶ 33.) She was served with a Notice to Appear and removal proceedings were initiated against her under 8 U.S.C. § 1182(a)(6)(A)(i) as "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General" before the Otay Mesa Immigration Court. (*Id.* ¶ 34; Dkt. No. 4-1, Return, Ex. 1, Notice to Appear.) She claims she is currently being detained unlawfully in custody of the Department of Homeland Security ("DHS") at the Otay Mesa Detention Center during her removal proceedings. (*Id.* ¶ 1.)

As such, on November 2, 2025, Petitioner filed a petition for writ of habeas corpus asserting that her detention violates the Immigration and Nationality Act ("INA") and the due process clause of the Fifth Amendment. (*Id.* ¶¶ 40-46.) She requests a writ of habeas corpus ordering Respondents to release Petitioner immediately from custody, or, in the alternative, order a constitutionally adequate bond hearing before a neutral decisionmaker at which the Government must justify her continued detention by clear and convincing evidence. (*Id.*) However, as to a bond hearing, in her traverse, she seeks the Court to direct the DHS to provide an individualized bond hearing consistent with *Matter of Gurrera*, 24 I & N Dec. 37 (BIA 2006).

/ / /

## Discussion

### A. Legal Standard

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement). A prisoner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

### B. Subject Matter Jurisdiction

Respondents maintain that this Court lacks jurisdiction over Petitioner's claims under 8 U.S.C. §§ 1252(b)(9) and (g). (Dkt. No. 4 at 6-9.[1]) Petitioner responds that § 1252(b)(9) does not bar habeas review of collateral custody challenges and § 1252(g) does not apply in this case. (Dkt. No. 5 at 2-5.)

#### 1. Section 1252(g) – Decisions by Attorney General

8 U.S.C. § 1252(g) states that, with limited exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien[.]" 8 U.S.C. § 1252(g) (emphasis added); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). In that light, §

---

[1] Page numbers are based on the CM/ECF pagination.

1252(g) is a narrow statutory provision that concentrates on those three discrete actions. *Reno*, 525 U.S. at 482. Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025). This section does not apply to "general collateral challenges to unconstitutional practices and policies used by the agency." *Id.* (internal quotation mark and citation omitted).

Respondents argue that the § 1252(g) bar applies because Petitioner's claims arise "from the decision or action by the Attorney General to commence proceedings [and] adjudicate cases." (Dkt. No. 4 at 7.) Petitioner responds that she does not challenge DHS's decision to initiate removal proceedings, and adjudicate or execute removal order; rather she is challenging DHS's decision to classify her detention under § 1225(b)(2) instead of § 1226(a). (Dkt. No. 5 at 4.)

The Court agrees with Petitioner that how DHS exercises its detention authority classifying Petitioner does not fall within the three discrete actions identified in § 1252(g) and, thus, would not deprive the Court's jurisdiction. *See e.g., Constantinovici v. Bondi*, -- F. Supp. 3d --, 2025 WL 2898985, at *3 (S.D. Cal. Oct. 10, 2025) (court has jurisdiction to consider challenges to detention as unlawful); *Chavez v. Noem,* -- F. Supp. 3d --, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (detention may be during but nonetheless independent of the removal proceedings); *Garcia v. Noem*, No. 25-CV-02180-DMS-MMP, 2025 WL 2549431, at *3-4 (S.D. Cal. Sept. 3, 2025) (Petitioners' challenge to the new bond policy and the immigration judge order considering Petitioners detained under § 1225 rather than § 1226(a) does not fall under § 1252(g)).

Thus, § 1252(g) does not present a jurisdictional bar to the instant petition.

    **2.  Section 1252(b)(9) – Zipper Clause**

Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C.

§ 1252(b)(9). Section 1252(b)(9) is seen as a general jurisdictional limitation that channels judicial review of immigration actions and decisions and acts as a zipper clause. *Reno,* 525 U.S. at 483. "However, what it 'zips' are requests for review of various kinds of agency action which are heard by means of petitions for 'judicial review' . . . [i]t does not affect petitions for habeas corpus." *Flores-Miramontes v. I.N.S.*, 212 F.3d 1133, 1139 (9th Cir. 2000). Claims that are "independent of or collateral to the removal process," including the legality of detention, fall outside the scope of § 1252(b)(9). *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) (citation and internal quotations omitted) ("Section 1252(b)(9) is also not a bar to jurisdiction over noncitizen class members' claims because claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process."); *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

Respondents claim that any issue, directly or indirectly, arising from any removal related activity can only be reviewed through a petition for review process with the court of appeals and divests this Court of jurisdiction. (Dkt. No. 4 at 8-9.) Therefore, because Petitioner is challenging the government's decision to detain her in the first place, her claim is barred under § 1252(b)(9). (*Id.* at 9.) Petitioner disagrees arguing that she does not challenge the decision to commence proceedings, or even the discretionary decision to detain; rather, Petitioner challenges the classification of her detention under § 1225(b)(2) instead of § 1226(a). (Dkt. No. 5 at 3.)

Here, Petitioner is challenging her classification of detention under § 1225(b)(2). (Dkt. No. 5 at 3; *see also* Dkt. No. 1, Pet. ¶ 40.) "Petitioner's detention may be during, but is nonetheless independent of, the removal proceedings." *Medina-Ortiz v. Noem*, No. 25-cv-02819-DMS-MMP, at *4 (S.D. Cal Oct. 30, 2025). Thus, § 1252(b)(9) does not present a jurisdictional bar.[2]

---

[2] In a footnote, the government alternatively argues that the Court should confirm that Petitioner has properly exhausted administrative remedies. (Dkt. No. 4 at 10 n.1.) In her petition and traverse,

## C. Merits

### 1. Whether the INA Subjects Petitioner to Mandatory Detention

The habeas petition raises an issue of statutory construction as to whether the Immigration and Nationality Act ("INA") subjects all applicants for admission, even non-citizens who entered without admission or inspection and have resided in the United States for years without lawful status, to mandatory detention for the duration of their immigration proceedings. If so, an immigration judge would lack the authority to entertain a bond request. Respondents argue that the plain language 8 U.S.C. § 1225(b)(2)(A) imposes a mandatory detention requirement and bars immigration judges from granting such a non-citizen bond. Meanwhile, Petitioner contends that he is entitled to a bond hearing under 8 U.S.C. § 1226(a).

---

Petitioner argues that any appeal to the BIA is futile in light of the BIA's precedential decision in *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), where it held that anyone deemed inadmissible under § 1182(a)(6)(A)(i) (that is, "[a]n alien present in the United States without being admitted or paroled") will be subject to mandatory detention without bond under § 1225(b)(2). (Dkt. No. 1, Pet. ¶¶ 35-37; Dkt. No. 5 at 5-6.)

A petitioner must exhaust administrative remedies by appealing to the BIA before seeking judicial remedies and include bond determinations. *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).

BIA's precedential decisions "serve as precedents in all proceedings involving the same issue or issues." 8 C.F.R. §§ 1003.1(g)(1), (d)(i). Because *Matter of Yajure-Hurtado* received a citation designation and the BIA statement that "[t]his case presents an issue that the Board has not previously addressed in a precedential decision--the Immigration Judge's authority to hold a bond hearing for an alien present in the United States who has not been admitted after inspection", s*ee* 29 I&N at 216, the Court concludes that *Matter of Yajure-Hurtado* is a precedential decision.

Therefore, because the BIA is likely to hold that anyone who is deemed "[a]n alien present in the United States without being admitted or paroled," will be subjected to mandatory detention without bond under § 1225(b)(2), Petitioner has shown that a BIA appeal would be futile. Accordingly, the Court finds that the prudential exhaustion requirement is waived. *See Garcia*, 2025 WL 2549431, at *5.

### a. 8 U.S.C. § 1225(b)(2)(A) and § 1226(a)

Noncitizens are detained during removal proceedings under two statutes: 8 U.S.C. §§ 1225 and 1226. Section 1225 governs inspection by immigration officers and expedited removal proceedings for "applicants for admission" who are defined as an "alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). An applicant for admission "seeking admission or readmission to or transit through the United States" is inspected by immigration officers. *Id*. § 1225(a)(3). If an applicant is deemed inadmissible after inspection, the applicant will be subject to expedited removal "without further hearing or review," unless an intention to apply for asylum is indicated where the applicant would then be referred for a credible fear interview. *Id*. § 1225(b)(1)(A)(i)-(ii). For other applicants for admission, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a." *Id*. § 1225(b)(2)(A). A limited exception provides that a "noncitizen detained under [s]ection 1225(b)(2) may be released if she is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018). Otherwise, "detention under § 1225(b)(2) is considered mandatory . . . [and] [i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lepe v. Andrews*, -- F. Supp. 3d --, 2025 WL 2716910, at *3 (E.D. Cal. Sept. 23, 2025) (internal quotation marks omitted) (quoting *Lopez Benitez v. Francis*, -- F. Supp. 3d --, 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025)).

In contrast, § 1226 addresses apprehension and detention of aliens and generally governs the process of arresting and detaining aliens present in the United States, including aliens who were inadmissible at the time of entry. *Jennings*, 583 U.S. at 288. Section 1226 states, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226(c), however, "carves out a statutory

category of aliens who may not be released under § 1226(a)," which focuses on those who are inadmissible or deportable because of certain crimes. *Jennings*, 583 U.S. at 296-97; 8 U.S.C. §§ 1226(a), (c).

"When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination", *Rodriguez Diaz*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)), where the noncitizen "must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). After a decision has been made, the noncitizen may request a bond hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1). At the bond hearing, "the burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'" *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)). "Section 1226(a), therefore, establishes a discretionary detention framework." *Otilio B.F. v. Andrews*, -- F. Supp. 3d --, 2025 WL 3152480, at *5 (E.D. Cal. Nov. 11, 2025) (citation and internal quotation marks omitted).

### b. Statutory Interpretation of § 1225(b)(1)

"The starting point for our interpretation of a statute is always its language." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989) (citation omitted). "But oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 576 U.S. 473, 486 (2015) (internal quotation marks and citation omitted). In doing so, "a court 'must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" *Shulman v. Kaplan*, 58 F.4th 404, 410–11 (9th Cir. 2023) (citation omitted).

/ / /

/ / /

### i. Plain Meaning of § 1225(b)(1)

Petitioner does not deny that she is an "applicant for admission" as the term is defined under § 1225(a)(1). Instead, the parties dispute whether § 1225(b)(2) applies to her. Section 1225(b)(2) provides, in pertinent part, "in the case of an alien who is an applicant for admission, if the examining officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." 8 U.S.C. § 1225(b)(2) (emphasis added). Respondents maintain that Petitioner is subject to mandatory detention under § 1225(b)(2) as an "applicant for admission." (Dkt. No. 4 at 10-13.) Petitioner contends § 1225(b)(2) only applies to an alien who is "encountered at or near the border" and not to someone who entered years ago. (Dkt. No. 1, Pet. ¶ 40; Dkt. No. 5 at 6-7.)

The term "seeking admission" is not defined under Section 1225. As many cases in this District and this Circuit have found, "seeking admission" is best understood to require "an affirmative act such as entering the United States or applying for status." *See Mosqueda v. Noem*, No. 25-CV-2304 CAS (BFM), 2025 WL 2591530, at *5 (C.D. Cal. Sept. 8, 2025); *see also Esquivel-Ipina v. LaRose*, No. 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *5 (S.D. Cal. Oct. 24, 2025); *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice."). Here, Petitioner was not "seeking admission" within this interpretation. She was arrested in the interior of the United States, in the driveway of her home, not while presenting herself at the gate of entry to attempt to apply for admission.

### ii. Government's Longstanding Practice

The Court's interpretation is further supported by the enforcement agency's past interpretation of §§ 1225(b) and 1226. Prior to enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") governing expedited and

regular removal proceedings, handling of asylum claims, and other activities involving the apprehension, detention, hearing of claims and ultimately the removal of inadmissible and deportable aliens, the term "seeking admission" was confined to aliens arriving at the port of entry under the prior § 1225. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 223 (BIA 2025). After the IIRIRA was enacted, DHS's predecessor agency, the U.S. Immigration and Naturalization Service ("INS"), "detained arriving aliens" under § 1225(b), but "[n]oncitizens who were present without admission were detained under the discretionary rules of 8 U.S.C. § 1226(a)." *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312-01, 10323, 1997 WL 93131 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.")). In arriving at this application, the INS did not find it necessary to interpret "seeking admission."

This longstanding practice from 1997 through 2025, requires the Court to afford due respect to Executive Branch interpretations of §§ 1225(b) and 1226(a). *See Edwards' Lessee v. Darby*, 25 U.S. 206, 210 (1827) ("In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect.").[3] The U.S. Supreme Court in *Loper Bright Enters. v. Raimondo* observed

---

[3] *Hurtado* noted that respect for this longstanding practice initiated by INS in 1997 was unwarranted because the policy only applies to a "doubtful and ambiguous law" and finding that the INA text is clear and not ambiguous. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 226 (BIA 2025). Yet the panel acknowledged that the issue of statutory construction of the INA is complicated by a patchwork of statutes implemented at different times and intended to address different issues. *Id*. at 227. Here, both sides claim that the statute is plain and that their interpretation is the reasonable one. Yet interpretation of § 1225(b)(2) is complicated due to the complex set of legal provisions and the term "seeking admission" is surrounded by enough ambiguity that giving weight to the "longstanding" application of this interpretation is warranted. The Court also takes into account the congressional failure to revise or repeal the agency's interpretation. *See N.L.R.B. v. Bell Aerospace Co*. *Div. of Textron Inc*., 416 U.S.

that "[s]uch respect was thought especially warranted when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." 603 U.S. 369, 386 (2024).  That is because "the longstanding 'practice of the government, [ ] can inform [a court's] determination of 'what the law is[.]'" *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014) (first quoting *McCulloch v. Maryland*, 17 U.S. 316, 401 (1819); then quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)).

On July 10, 2025, a U.S. Customs and Border Protection Memorandum was issued titled "Detention of Applicants for Admission." https://www.cbp.gov/document/foia-record/detention-applicants-admission.  The Memorandum indicated that DHS, in coordination with the DOJ, "revisited its legal position" on the INA and determined that § 1225, rather than § 1226, is the applicable immigration authority for an "applicant for admission" including an alien present in the U.S. "who has not been admitted . . . whether or not at a designated port of arrival." *Id.*  It stated "it is the position of DHS that applicants for admission are subject to mandatory detention under INA § 235(b) and may not be released from DHS custody except by INA § 212(d)(5) parole." *Id.*  The Memorandum further provides that for custody purposes, "these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.  The only aliens eligible for a custody determination and release on recognizance, bond, or condition parole under INA § 236(a) are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c)." *Id.*  This new legal position was provided to ICE employees in an "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See Bethancourt Soto v. Soto*, --F. Supp. 3d--, 2025 WL 2976572, at *2 n.1

---

267, 274-75 (1974).  Congress would have had the opportunity to do so when it enacted the Laken Riley Act which created the § 1226(c) mandatory detention provisions for certain criminal aliens.

(D.N.J. Oct. 22, 2025) (quoting *Vasquez v. Feeley*, --F. Supp. 3d--, 2025 2676082, at *5 n.2 (D. Nev. Sept. 17, 2025).

The Memorandum does not address the "seeking admission" language that is at core of the dispute nor did it justify the changed position given the prior longstanding application of the statute. In fact, the Government has acknowledged in other recent cases that prior to the issuance of the July 10, 2025 Memorandum, a non-citizen who had lived here at the time of the detention would have been eligible for a bond hearing. *See generally Zumba v. Bondi*, Civ. No. 25-cv-14626 (KSH), 2025 WL 2753496, at *4 (D.N.J. Sept. 26, 2025) ("Respondents readily admit that if petitioner had been arrested on the basis of her inadmissibility prior to July 8, 2025, she would have been discretionarily detained under 8 U.S.C. § 1226(a) and eligible for a bond hearing."). As a result, it is surprising that the Respondents now contend that the plain and unambiguous language of § 1225 supports a mandatory detention interpretation which means that the Government has been misapplying a mandatory provision for nearly 30 years.

Given the Government's longstanding interpretation of §§ 1225(b) and 1226(a), the Court is further persuaded that "seeking admission" applies to arriving aliens and not aliens who have entered without inspection and lived in the United States for years.

### iii.   Statutory Canons of Interpretation

In addition, Respondents' new interpretation of § 1225(b)(1) "violates the rule against surplusage and negates the plain meaning of the text." *Quijada Cordoba v. Knight*, --F. Supp. 3d--, 2025 WL 3228945, at *6 (D. Id. Nov. 19, 2025) (citations omitted). First, "Respondents' interpretation of 'seeking admission' as used in the mandatory detention provision of Section 1225(b)(2)(A) would seemingly render that phrase mere surplusage, such that the language could be deleted while retaining the same statutory meaning." *Lopez v. Warden, Otay Mesa Det. Ctr.*, No. 25-CV-2527-RSH-SBC, 2025 WL 3005346, at *3 (S.D. Cal. Oct. 27, 2025). This interpretation runs counter to the interpretative canon that effect should be given to all statutory provisions. Therefore, the more apt interpretation in alignment with the canon must, instead, account for

"seeking admission" as an additional requirement to those identified as "applicants for admission."

Second, Respondents' interpretation blurs the lines between § 1225(b) and § 1226(a). As made clear in *Jennings*, "U.S. immigration law authorizes the government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289. The Supreme Court thereby interprets § 1225(b) to apply to "aliens seeking admission to the country," while § 1226(a) applies to "aliens already in the country." *Jennings*, 583 U.S. at 289. Here, Petitioner is sensibly characterized as a noncitizen "already in the country" rather than one "seeking admission." Indeed, "[t]he overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Lopez*, 2025 WL 3005346, at *4 (citations omitted).

Third, § 1226 already provides an exception to its rule that the Attorney General may set bond or release an alien on conditional parole, specifically under subsection (c). Enacted by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), § 1226(c)(1)(E) requires mandatory detention for people who are inadmissible under §§ 1182(a)(6)(A), (6)(C), or (7) *and* charged with certain crimes. 8 U.S.C. § 1226(c)(1)(E). Beyond the fact that Petitioner doesn't satisfy these requirements, "Respondents' interpretation of Section 1225(b)(2)(A) would seemingly render the foregoing language from Section 1226(c) a nullity." *Lopez*, 2025 WL 3005346, at *4 (citations omitted). Specifically, "if § 1225(b)(2) already encompassed all inadmissible noncitizens, there would be no need to pass an amendment that required detention for those who are inadmissible under the same statutes and are being charged with specific crimes." *Medina-Ortiz v. Noem*, No. 25-cv-02819-DMS-MMP, at *5 (S.D. Cal Oct. 30, 2025). Such an "interpretation would render the Laken Riley Act, 'superfluous'" and, therefore, should not be accepted. *Id*.

In sum, the Court concludes that Petitioner is not an alien "seeking admission" under § 1225(b)(2) and that an immigration judge retains authority to grant conditions of bail under §1226(a).  Accordingly, the Court finds that Petitioner is being unlawfully detained under § 1225(b)(2) and is entitled to a bond hearing.[4]

## Conclusion

Based on the reasoning above, the Court GRANTS the petition for writ of habeas corpus pursuant to 8 U.S.C. § 2241.

The Court ORDERS Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within seven (7) days of this Order.  Respondents are ORDERED to FILE a Notice of Compliance within ten days of providing Petitioner with a bond hearing.  The Clerk of Court SHALL enter judgment in Petitioner's favor and close this case.

IT IS SO ORDERED.

Dated:  December 11, 2025

Hon. Gonzalo P. Curiel
United States District Judge

---

[4] Having reached this conclusion on Petitioner's first claim for relief, the Court declines to address Petitioner's second claim for relief under the due process clause of the Fifth Amendment.